Robert CHESTNUT, Petitioner,

v.

Martin MAGNUSSON, Respondent,
Appellee.

No. 91–1070.

United States Court of Appeals,
First Circuit.

Submitted May 21, 1991.

Decided Aug. 29, 1991.

Robert A. Chestnut, pro se.

Michael E. Carpenter, Atty. Gen., Lucinda E. White, Asst. Atty. Gen., and Charles K. Leadbetter, Asst. Atty. Gen., on brief for respondent, appellee.

Before BREYER, Chief Judge, and CAMPBELL and SELYA, Circuit Judges.

PER CURIAM.

This appeal presents the question whether a state's failure to provide a system of good-time credits for time spent in pretrial detention, while allowing such credits to sentenced prisoners, amounts to a denial of equal protection to those serving sentences who, unable to make bail because of indigency, were incarcerated prior to trial.

## I. BACKGROUND

### A. *Proceedings in State and Federal District Courts*

Appellant pled guilty in the Maine Superior Court to a five-count indictment charging violations of Maine law (theft, burglary and escape). He was sentenced to a total of eight years imprisonment. Appellant did not appeal from his conviction and sentence. However, he petitioned for state post-conviction review, contending that tit. 17–A of M.R.S.A. § 1253 violated the equal protection clause of the Fourteenth Amendment, as it allowed sentenced prisoners to earn good-time credits, but did not provide the same opportunity to those detained prior to trial because of inability to make bail. This, he argued, created a suspect class of indigent criminal defendants. Appellant's claim was denied by the Maine Superior Court and the Maine Supreme Judicial Court denied a certificate of probable cause to appeal.

Appellant then filed a habeas petition pursuant to 28 U.S.C. § 2254 in the federal district court, making the same contention raised in his state habeas motion. The district court dismissed the petition and denied a certificate of probable cause. We granted such a certificate, believing that the constitutionality of § 1253 amounted to a question of sufficient substance to deserve appellate scrutiny. We now affirm the judgment of the district court.

### B. *Maine Statutory Provisions*

17–A M.R.S.A. § 1253(1) (Calculation of period of imprisonment) provides:

The sentence of any person committed to the custody of the Department of Corrections shall commence to run on the date on which that person is received into the correctional facility designated as the initial place of confinement by the Commissioner of Corrections pursuant to section 1258. That day is counted as the first full day of the sentence.

However, a sentenced person who has been detained awaiting trial or sentencing is entitled to receive "a day-for-day deduction from the total term of imprisonment...." *Id.* § 1253(2).

Different categories of good-time credit are available for sentenced prisoners but no good-time credit is extended to pretrial detainees. Thus, sentenced prisoners receive a fixed amount of credit (ten days per month for sentences of more than six months and three days per month for sentences of six months or less) "for observing all rules of the department and institution." *Id.* § 1253(3), (3–B). For sentenced prisoners "who are assigned work and responsibilities within the institution or program" in which he or she has been placed, an additional three days per month may be deducted if the work or responsibilities "are deemed to be of sufficient importance to warrant those deductions...." *Id.* § 1253(4). Finally, an additional two days per month may be deducted for sentenced inmates participating in "minimum security community programs." *Id.* § 1253(5). Pursuant to § 1253(6), the credit awarded under subsections 3 and 3–B "may be withdrawn by the supervising officer of the institution for the infraction of any rule of the institution, for any misconduct or for the violation of any law of the State."

■ The period from which the good-time credit deduction is made "shall be calculated from the first day the person is delivered into the custody of the department [of corrections]...." *Id.* § 1253(3). Pursuant to subsection (1), *supra*, this is the day a defendant's sentence begins to run. As already noted, therefore, in computing the amount of good-time credit to which a defendant is entitled, the statute does not permit credit for any time spent in pretrial detention. Thus, a defendant who remained free on bail pending trial may have more good-time credit offset against his total sentence than a similarly sentenced prisoner who was detained prior to trial due to indigency. Appellant claims that this difference amounts to a wealth-based distinction that violates the equal protection of the laws guaranteed by the Fourteenth Amendment of the federal constitution.

## II. DISCUSSION

In *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the Supreme Court addressed a rather similar challenge to New York's statutory scheme concerning the award of good-time credits. Under New York law, inmates had a minimum parole date, the earliest time he or she could be released in the Parole Board's discretion, and a statutory release date, the day on which the inmate had to be released. New York law allowed inmates day-for-day credit for the time spent in pretrial detention, but did not allow, in calculating the minimum parole date, any further reduction of such time by the offset of good-time credit. However, in determining the statutory release date, good-time credit for time spent in a county jail awaiting trial was taken into consideration. Also, those not convicted of felonies who were confined to county penitentiaries received good-time

credit for pretrial detention.[1]

The Court in determining whether New York's statutory scheme violated equal protection stated,

> We note ... that the distinction of which appellees complain arose in the course of the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society. The determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them. Appellees themselves recognize this to be the appropriate standard. For this Court has observed that "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose. We conclude that it does.

*Id.* at 269–70, 93 S.Ct. at 1059 (citations and footnote omitted).

The Court went on to point out that pretrial detainees were held in detention centers which did not offer rehabilitation services, while state prisons provided such services. *Id.* at 271, 93 S.Ct. at 1060. Because good-time credits were, in part, related to an inmate's performance of assigned duties, the prisons afforded state officials an opportunity to evaluate an inmate's rehabilitative efforts. The detention centers, on the other hand, could not provide the same opportunity. *Id.* at 271–73, 93 S.Ct.

at 1060–61. Thus, the extension of good-time credits to sentenced prisoners only, was rationally related to New York's interest in rehabilitation. *Id.* at 271, 93 S.Ct. at 1060.

The Court noted that while prisoner discipline might be the "primary" focus of the New York good-time scheme, rehabilitation was also a purpose. *Id.* at 276, 93 S.Ct. at 1062–63. The Court commented: "[s]o long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying." *Id.*

Courts addressing claims similar to the present have commonly relied on the analysis in *McGinnis*. For example, in *State v. Aqui*, 104 N.M. 345, 721 P.2d 771, *cert. denied*, 479 U.S. 917, 107 S.Ct. 321, 93 L.Ed.2d 294 (1986), the Supreme Court of New Mexico held that New Mexico's good time credit scheme did not violate equal protection. New Mexico's provisions were similar to those in the Maine Criminal Code. An inmate confined to a state penitentiary could receive ten days " 'meritorious good time per month based on good conduct ... provided that an inmate who disobeys an order to perform labor ... shall not receive meritorious good time....' " 721 P.2d at 774 (quoting N.M.S.A. § 33–2–34(A)). Those inmates in an " 'enterprise program' " could receive up to twenty days " 'industrial good time per month based on work conduct, performance and responsibilities' " while those in other programs or engaged in providing other services also could earn additional " 'meritorious good time.' " *Id.* (quoting §§ 33–8–14, 33–2–34(A)). Finally, " 'exceptionally meritorious service' " could result in a lump sum good time award. *Id.* (quoting § 33–2–34(B)).

1. The *McGinnis* Court noted that New York had changed its law and abolished the consideration of good-time in the calculation of a minimum parole date. Under the new law, a prisoner appeared before the Parole Board when his minimum term expired regardless of how much time the prisoner had spent in pretrial detention or how much good-time credit had been earned. The inmates in *McGinnis* were allowed to elect this new law but did not. The Court pointed out that as a result of the change in the law the inmates were in the same position as those who were let out on bail and who were convicted for offenses committed after the new law took effect. *Id.* at 269, 93 S.Ct. at 1059. The Court also noted that the impact of the difference between the two groups was lessened because the inmates were only being denied the "potential" to earn additional good-time but did receive a day-for-day credit for active time spent in jail prior to trial. *Id.*

The New Mexico court, like the Supreme Court in *McGinnis*, applied the rational relationship test. It stated that good time credit was aimed at " 'enhanc[ing] the rehabilitation, education and vocational skills of inmates through productive involvement in enterprises and public works....' " *Id.* at 775 (quoting N.M.S.A. 1978, § 33–8–3 (Repl.Pamp.1983)). It pointed out that the facilities in which convicted persons are held were equipped to record and evaluate a prisoner's performance in determining whether to award good time credit. It distinguished pretrial detention on two grounds. First, as *McGinnis* had pointed out, pretrial detainees are presumed innocent and may not be compelled to work. Second, also as in *McGinnis*, the record-keeping requirements concerning behavior of pretrial detainees were minimal. *Id.* 721 P.2d at 775.

The Tenth Circuit recently upheld the *Aqui* analysis in *Lemieux v. Kerby*, 931 F.2d 1391 (10th Cir.1991). There, a New Mexico state prisoner challenged the same good time credit statutory scheme described in *Aqui*. He claimed that its purpose was not rehabilitation but to maintain order in prisons by promoting good behavior. He argued that the statute itself distinguished between credit awarded for good behavior in § 33–2–34 and credit awarded for participation in work or educational programs in § 33–8–14.

The court of appeals rejected this argument. It stated that "even if the primary purpose behind § 33–2–34, the 'good time' credit provision, is to encourage good behavior as a means of keeping order, such a goal is not inconsistent with a legislative desire to rehabilitate society's criminals. Certainly a key component of any successful rehabilitation is helping inmates learn how to properly behave." 931 F.2d at 1393. Where the "plain language" of the good time statute disallowed good time credit to any inmate " '*who ... disobeys an order to perform labor....*' " *Id.* at 1394 (quoting § 33–2–34) (emphasis in original), the court felt that the provision indicated a rehabilitative purpose.

Another case applying a rational relationship analysis is *People v. Turman*, 659 P.2d 1368 (Colo.1983). Two prisoners had brought motions for post-conviction relief. Being indigent when they were arrested, both prisoners were unable to post bail. They claimed that denying them good-time credit for presentence time resulted in their having to spend a longer time incarcerated than an individual who had received the same sentence but who had posted bail.

Although the question of good-time "implicate[d] a liberty interest," the court concluded that it was not a "fundamental one." 659 P.2d at 1371. It found no constitutional right, as such, to good-time credit. *Id.* The court declined to find that indigency created a suspect class triggering strict scrutiny. *Id.* at 1372. Instead, it found no violation of equal protection so long as there was a rational basis for the challenged distinction.

According to the *Turman* court,

[a]lthough it is true that the state has an interest in maintaining discipline in both places of incarceration [i.e., pretrial detention and post-conviction prison], it does not necessarily follow that any difference in the means of maintaining it is irrational. The legislature might well have concluded that an added incentive for good behavior is necessary after conviction and sentencing, but that such an incentive is not necessary when the pretrial detainee has before him the prospect of a sentencing hearing in which the judge may consider his behavior while incarcerated.

*Id.* at 1373 (footnote omitted). The court pointed out that the Colorado statute awarded good-time credits to a prisoner who has " 'committed no infractions of the rules or regulations ... *and* who performs in a faithful, diligent, industrious, orderly, and peaceable manner the work ... assigned to him....' " *Id.* at 1371 (quoting C.R.S. § 17–20–107) (emphasis added). Thus, one of the purposes was rehabilitation. *Id.* at 1373.

■ We conclude that § 1253 passes constitutional muster. State legislation is "presumed to be valid." *City of Cleburne*

*v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The indigency that may lead to an inability to post bail does not suffice to create a class calling for strict scrutiny rather than a rational relationship analysis. Thus the good-time distinctions in § 1253 between detainees and sentenced inmates need only have " 'some relevance to the purpose for which the classification is made.' " *See Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) (quoting *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966)). Section 1253 is constitutional unless the different treatment of pretrial detainees is " 'so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *Pennell v. City of San Jose,* 485 U.S. 1, 14, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979)). *See also Dickerson v. Latessa,* 872 F.2d 1116, 1120 (1st Cir.1989).

Not to allow credit for good-time spent in pretrial detention is clearly not irrational. As the *Turman* court observed, it is reasonable for a state legislature to conclude that a sufficient incentive for good behavior in the pretrial detention setting is provided by the prospect of being sentenced to a longer term of imprisonment based on a detainee's behavior while so incarcerated. *See* 659 P.2d at 1373. No such incentive exists for the sentenced prisoner. That the legislature has chosen to rely *only* on the possibility of a longer sentence as a means of encouraging adherence to disciplinary rules and not to make available to pretrial detainees the chance to earn good-time credits is within the sensitive balance the legislature must strike in determining how best to administer the prison system.

The *McGinnis* Court stressed that *rehabilitation* was a goal of the system in issue there; here the Maine legislature has not expressly mentioned "rehabilitation" in § 1253(3) and (3–B). However, this omission does not mean that rehabilitation may not have been an unstated goal of this category of good-time credit. As the *Lemieux* court pointed out, good behavior is a component of rehabilitation. *See* 931 F.2d at 1393. In any case, the inherent differences between pretrial detention and post-sentencing imprisonment provide a rational basis for affording good-time credits in the latter but not in the former.

*Affirmed.*