IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 00-006

2000 MT 62

299 Mont. 46

997 P. 2d 753

_____

WILLIAM R. MacPHEAT, )

)

Petitioner, )

)

v. ) O P I N I O N

) AND

MIKE MAHONEY, Warden, ) O R D E R

Montana State Prison, )

)

Respondent. )

_____

1. ¶William R. MacPheat (MacPheat), *pro se*, an inmate at the Montana State Prison

(MSP), has petitioned this Court for a writ of habeas corpus. We conclude that MacPheat's petition is meritorious as to one claim, and we remand for further proceedings consistent with this opinion and order.

## .Background

1. ¶From the limited record before us, the following appears to be the procedural background of this matter. In October 1995, MacPheat was charged by Amended Information with felony arson, misdemeanor assault and attempted assault, and misdemeanor criminal mischief in the Eleventh Judicial District Court, Flathead County. Pursuant to § 46-18-201(1)(e), MCA (1993), and his plea of guilty to arson under a plea agreement, MacPheat was sentenced to the Department of Corrections (DOC) for ten years with two years suspended. The sentencing judge recommended MacPheat for the Intensive Supervision Program (ISP). She imposed conditions with which MacPheat would be required to comply if admitted to probation or parole, and she ordered him to receive credit for 331 days of pre-sentence incarceration. MacPheat was placed in the ISP in Kalispell, Montana on December 1, 1995.

2. ¶Approximately two months later, on January 24, 1996, the State filed another Information in which MacPheat was charged with felony deceptive practices. MacPheat pleaded guilty under a plea agreement and was sentenced to DOC for three years to run consecutive with the arson sentence. MacPheat was returned to the MSP on May 8, 1996.

3. ¶MacPheat challenges the legality of his continued incarceration. He contends that he discharged his sentence on January 5, 2000. He argues that this Court should grant his petition because (1) he is being denied equal protection of the law under the Fourteenth Amendment of the United States Constitution as he did not receive good-time credit while he awaited sentencing in the county jail; and because (2) § 46-23-201(6), MCA (1993)[1], mandates he appear before the Parole Board for a parole hearing as to his first sentence no later than February 18, 1996. We address only MacPheat's first claim as this is dispositive of his petition.

## Discussion

1. ¶Habeas corpus relief is available to one illegally imprisoned or otherwise restrained of his liberty. Section 46-22-101, MCA. MacPheat contends that, had he received all of the good-time credit to which he was entitled, he would have discharged his

sentence on January 5, 2000. Accordingly, he maintains that he is presently being imprisoned in violation of the law. If, in fact, MacPheat has discharged his sentence but is still imprisoned, then habeas corpus relief is available as he is being unlawfully imprisoned and restrained of his liberty.

2. ¶Under § 53-30-105(1), MCA (1995)[2] the DOC may:

[G]rant a good time allowance to inmates housed at an adult correctional facility or a supervised release program facility. The good time allowance may operate as a credit on the inmate's sentence as imposed by the court, conditioned upon the inmate's good behavior and compliance with the rules adopted by the department. The department may not grant good time allowance to exceed 1 day for each day served at an adult correctional facility or a supervised release program facility.

Under this statute, the DOC may take away all or part of an inmate's good time for attempted escape and for violations of DOC rules. Section 53-30-105(2), MCA. Persons may earn (and lose) good time while on parole, but may not earn good time while serving probation. Section 53-30-105(3), MCA. Under § 53-30-105(4), MCA, the DOC may restore all or part of previously forfeited good time for subsequent good behavior. And, under § 53-30-105(5), MCA, the DOC may grant some additional good-time credit to advance an inmate's parole eligibility in the event the MSP population exceeds the design capacity of the institution.

1. ¶As the State correctly points out, however, there is no provision in § 53-30-105, MCA which permits the DOC to award good time to individuals who are incarcerated in a county detention center.

2. ¶Notwithstanding this seeming statutory restriction, MacPheat argues that he is entitled to good-time credit for the time that he was incarcerated in the county jail.[3] For his position, he relies on *MacFarlane v. Walter* (9th Cir. 1999), 179 F.3d 1131. Before discussing this case, though, some further legal background is necessary.

3. ¶In 1973, the United States Supreme Court handed down its decision in *McGinnis v. Royster* (1973), 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282. The *McGinnis* Court upheld the constitutionality of a New York sentencing scheme against an equal protection challenge. *McGinnis*, 410 U.S. at 277, 93 S.Ct. at 1063. The New York sentencing statute at issue denied certain state prisoners good-time credit toward parole eligibility for the period of their pre-sentence county jail incarceration,

whereas those released on bail prior to sentence received under the statute full allowance for good-time credit for the entire period of their prison confinement. *McGinnis* 410 U.S. at 263, 93 S.Ct. at 1056. The Court held that the New York scheme for good-time credit took into account a prisoner's performance under the program of rehabilitation that is fostered under the state prison system, but not in the county jails, which served primarily as detention centers. The Court recognized that the New York statutory scheme may have caused indigent defendants who could not make bail to serve longer actual jail time than those defendants who were able to make bail. *McGinnis*, 410 U.S. at 263, 93 S.Ct. at 1058. However, the Court also reasoned that since county jails have no significant rehabilitation programs, a rational basis exists for declining to give good-time credit for the pre-trial jail-detention period. *McGinnis*, 410 U.S. at 271, 93 S.Ct. at 1060.

4. ¶*McGinnis* would, thus, seem to provide the legal basis for rejecting MacPheat's similar equal protection claim. Specifically, under § 53-30-105, MCA, good-time credit is awarded as an incentive for good behavior and to foster rehabilitation through compliance with rules and participation in programs at the MSP. Similarly, good-time credit is forfeited for bad behavior and violation of the prison rules. For purposes of this matter, we assume that the Flathead County detention facility does not have significant rehabilitation programs. At least, if the contrary is true, that has not been affirmatively argued by the State. Therefore, under the *McGinnis* decision, a rational basis would appear to exist for denying MacPheat good-time credit for his pre-trial detainment in the Flathead County detention facility.

5. ¶In 1983, however, the U.S. Supreme Court applied the due process "fundamentally unfair or arbitrary" test to hold that a probationer's probation could not be revoked simply because he was unable to pay a fine. *Bearden v. Georgia* (1983) 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221. *Bearden* did not involve an issue of good-time credit being denied to those persons who remained incarcerated in county detention facilities because they were unable to bail out pre-sentence. In fact, nowhere in *Bearden* did the Court even refer to *McGinnis* much less overrule the holding in that case.

6. ¶Rather, noting its long history of sensitivity to the treatment of indigents in the criminal justice system and grounding its decision in the convergence of due process and equal protection principles, *Bearden*, 461 U.S. at 664-65, 103 S.Ct. at 2068, the Court focused on the effect that indigency often plays in probation revocations. *Bearden*, 461 U.S. at 666, 103 S.Ct. at 2069. The Court stated that, absent the probationer willfully refusing to pay a fine or restitution when he has the means to pay or failing to make a bona fide effort to seek employment or borrow the money

and having made all reasonable efforts to pay "it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Bearden,* 461 U.S. at 668-69, 103 S.Ct. at 2070-71. "Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay." *Bearden*, 461 U.S. at 672, 103 S.Ct. at 2073. To deprive a probationer of his conditional freedom simply because, through no fault of his own, he was unable to pay a fine or restitution "would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Bearden*, 461 U.S. at 672-73, 103 S.Ct. at 2073.

7. ¶In two decisions handed down after *Bearden*, both involving the same issue raised in *McGinnis*, the circuit courts of appeal applied *McGinnis* in reviewing state habeas proceedings to uphold the state sentencing schemes at issue against the same sort of equal protection challenge that MacPheat raises in the case at bar. *See Lemieux v. Kerby* (10th Cir. 1991) 931 F.2d 1391; *Chestnut v. Magnusson* (1st Cir. 1991) 942 F.2d 820. Indeed, *Lemieux* specifically rejected an argument that *Bearden* overruled *McGinnis. Lemieux*, 942 F.2d at 1393 n.4. *See also State v. Aqui* (N.M. 1986), 721 P.2d 771, 775, *cert. denied*, (1986), 479 U.S. 917, 107 S.Ct. 321, 93 L.Ed.2d 294, *accord*.

8. ¶That, in turn, brings us back to the Ninth Circuit's 1999 decision in *MacFarlane*. In *MacFarlane* the state habeas petitioners alleged that the Pierce County and Clark County (Washington) jail policies for "early release" or "good conduct" and "good performance" violated federal equal protection and due process guarantees as applied to them. The petitioners argued that these policies prevent county pre-sentence detainees who are unable to afford bail and are ultimately sentenced to a state facility operated by the department of corrections, from earning the same early-release credit as prisoners who are financially able to post bail and thus serve their entire sentences in a state facility. *MacFarlane*, 179 F.3d at 1134.

9. ¶The *MacFarlane* court ruled that the counties' allowance of fewer good-conduct credits to defendants detained pre-trial in county jails because of financial inability to post bail than would be allowed defendants whose financial resources permitted them to wait to begin serving their time until after commitment, post-sentencing, to a state correctional facility violated equal protection. *MacFarlane*, 179 F.3d at 1142. The court also held that the county policies were contrary to clearly established federal law--namely *Bearden*--and that the Washington Supreme Court's denial of the petitioners' habeas petitions was contrary to or an unreasonable application of *Bearden*, thus entitling petitioners to federal habeas relief under the Antiterrorism

and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d). *MacFarlane*, 179 F.3d at 1142.

10. ¶In reaching this decision, the *MacFarlane* court pointedly found *McGinnis* to be "informative, but distinguishable."

*McGinnis*, however, decided 12 years before *Bearden*, was not about indigency: although appellees Royster and Rutherford appear to have been unable to post bail because of indigency, [*McGinnis*], 410 U.S. at 266-67, 93 S.Ct. 1055, the issue was not framed as one of disparate treatment of indigent prisoners, nor did the Supreme Court so analyze it. Rather the issue presented involved the denial of early-release credit to the broad class of state prisoners detained in county jails, for whatever reason, prior to trial or prior to sentencing. The Supreme Court, therefore, applied the rational basis test. The petitioners here, as the Washington Supreme Court recognized, explicitly claim an equal protection violation based on their indigency. This is not to say that the Supreme Court in *McGinnis* could not have treated the case as one about indigency and analyzed the issue in this light, but it did not do so and, therefore, *McGinnis*, is not on point. It is probably for that reason that the Supreme Court did not mention *McGinnis* when it decided *Bearden*. Finally, we do not know, of course, what the Supreme Court would have held had it analyzed *McGinnis* under the *Bearden* standard.

*MacFarlane, 179 F.3d at 1140 n.11.*

1. ¶The *MacFarlane* court reasoned that *Bearden*, decided years after *McGinnis* and grounded in thirty years of precedents clearly established the law governing the good-time or early-release credit issue at bar and that *Bearden's* analysis controlled whether and under what circumstances an individual can be subjected to increased incarceration solely because of indigency. The *MacFarlane* court stated:

*Bearden* both articulated guiding principles for analyzing equal protection claims brought by indigent defendants and applied them to the specific issue presented, which, like the issue presented here, concerned increased incarceration because of indigency. *Bearden* stresses the necessity of weighing alternatives to increased incarceration as a means of punishing the indigent. . . . In no uncertain terms, the Court held that to deprive a defendant of his freedom simply because, through no fault of his own, he cannot pay would be contrary to the Fourteenth Amendment's requirement of fundamental fairness.

*MacFarlane, 179 F.3d at 1139 (internal citations to Bearden omitted).*

1. ¶The court also observed that it had relied on *Bearden* principles in another case involving the effects of indigency on incarceration. *MacFarlane*, 179 F.3d at 1139 (citing *United States v. Parks* (9th Cir. 1996), 89 F.3d 570 (finding a constitutional violation when points were added to a defendant's criminal history for sentencing guideline purposes solely as a result of the defendant's indigency)).

2. ¶However, and notwithstanding the court's decision in *MacFarlane*, the State argues that, as to the case *sub judice*, *McGinnis* controls the disposition of MacPheat's equal protection claim. The State contends that the Ninth Circuit erroneously decided *MacFarlane* based upon an expansive reading of *Bearden* and did so without adequately addressing the ramifications of *McGinnis*. On the basis of these "analytical flaws" the State urges that we not follow *MacFarlane*. We decline the State's suggestion.

3. ¶While we have never squarely held that this Court is specifically bound by Ninth Circuit federal law decisions under Supremacy Clause doctrine, the fact is that the Ninth Circuit Court of Appeals, the federal circuit to which Montana belongs, has rendered a decision interpreting the United States Constitution and applying federal case law to the precise issue which MacPheat raises under the Fourteenth Amendment in the case at bar. While we may not be required to follow *MacFarlane* given that there exists other case law from the U.S. Supreme Court which may, arguably, justify a contrary analysis and result, nonetheless, we conclude that the Ninth Circuit Court of Appeals' decision should be given deference.

4. ¶More to the point, the *MacFarlane* court's opinion is legally persuasive, especially in light of its analysis distinguishing *McGinnis.* We believe, as did the court in *MacFarlane*, that *Bearden* clearly and unambiguously stands for the principle that to deprive a criminal defendant of his freedom simply because, through no want of bona fide effort, willful refusal or fault of his own, he lacks the financial resources to buy his liberty would be contrary to the fundamental fairness required by the Fourteenth Amendment. *Bearden* 461 U.S. at 672-73, 103 S.Ct. at 2073; *MacFarlane*, 179 F.3d at 1139.

5. ¶That is not to say that poverty insulates the criminal defendant from having to post a reasonable and legally sufficient bail[(4)] should the facts and circumstances of his case so require in the trial court's discretion. *See Bearden*, 461 U.S. at 673, 103 S.Ct. at 2073 n. 12. Rather, *Bearden* and *MacFarlane*, read together, simply stand for a rule of fundamentally fair and equal treatment under the law. Specifically, we hold

that if the criminal defendant, for no other reason than his indigency, is unable to secure his pre-sentence freedom by posting bail, then he is entitled to good-time credit for the time he spends in the county detention facility, pre-sentence, to the same extent that the law allows good-time credit to the criminal defendant who is able to post bail and, thus, serve the entirety of his sentence in the state correctional facility.

6. ¶That said, the record before us does not establish whether MacPheat was offered or denied bail and whether, if offered, the sole reason for his inability to post the bail so offered was his indigency. Accordingly, this case must be remanded to the Eleventh Judicial District Court for fact finding and a decision relative to these issues. If the trial court determines that MacPheat is entitled to good-time credit for the time he spent in the county detention facility under the test articulated above, then the court shall determine the amount of good-time credit to which MacPheat is entitled and shall order DOC to apply that to the reduction of his sentence.

7. ¶IT IS ORDERED that MacPheat's petition for writ of habeas corpus is granted. This case is remanded to the Eleventh Judicial District Court for further proceedings consistent with this opinion and order. We direct that this matter receive priority on the District Court's calendar.

8. ¶IT IS FURTHER ORDERED that the Clerk of this Court give notice of this order by mail to MacPheat at his last known address; to counsel of record; to the Clerk of the District Court; to the District Court Judges of the Eleventh Judicial District; and to the Honorable C.B. McNeil, District Court Judge.[5]

Dated this 9th day of March, 2000.

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice Jim Regnier dissenting.

1. ¶I dissent from the majority's opinion and order granting MacPheat's petition for a

writ of habeas corpus and remanding the matter to the District Court. The United States Supreme Court has spoken on this issue and in my view we are bound by its decision, since MacPheat does not raise an independent claim under the Montana Constitution. I further believe the majority's reliance on *MacFarlane v. Walter* (9th Cir. 1999), 179 F.3d 1131, is problematic.

2. ¶The United States Supreme Court has held that a state may decline to give good-time credit for pre-trial jail detention periods even when doing so causes indigent defendants who could not make bail serve longer actual jail time than those defendants who were able to make bail as long as there is a rational basis for the scheme. *See McGinnis v. Royster* (1973), 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282. As the majority acknowledges, the holding of *McGinnis* has not been overruled and has recently been applied in two circuit court decisions to uphold state sentencing schemes against the same sort of equal protection challenge that MacPheat raises in the case at bar. *See MacPheat v. Mahoney, supra*, at ¶ 13 (opinion of majority) (citing *Lemieux v. Kerby* (10th Cir. 1991), 931 F.2d 1391; *Chestnut v. Magnusson* (1st Cir. 1991), 942 F.2d 820).

3. ¶The majority suggests that we "give deference " to the lone opinion of the Ninth Circuit in *MacFarlane* while at the same time acknowledging that the Supreme Court decision in *McGinnis* has not only not been subsequently overruled, but has been followed by two federal circuit courts. *MacPheat, supra,* at ¶ 20. I cannot distinguish *MacFarlane* from *McGinnis*, either factually or legally. Therefore, I think the Ninth Circuit clearly erred in not following *McGinnis* and I would not propagate the error any further.

4. ¶As in *McGinnis*, the petitioners in *MacFarlane* were indigent and unable to post bail and therefore served time in a county detention center prior to trial and sentencing. They claimed that as a result of their inability to post bail, they were denied due process and equal protection of the laws under a state scheme which prevented county pre-sentence detainees from earning the same early-release credits as those defendants who were able to post bail and thus serve their entire sentences in a state facility. Instead of simply applying *McGinnis* and denying the petitioner's appeal, the Ninth Circuit analyzed the issue under *Bearden v. Georgia* (1982), 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221.[6]

5. ¶The only acknowledgment of *McGinnis* appears in a footnote in which the Ninth Circuit claimed that "*McGinnis* is informative, but distinguishable" because it was "not about indigency." *MacFarlane*, 179 F.3d at 1140 n.11. However, *McGinnis* was clearly about indigency. Both petitioners in *McGinnis* served part of their sentences in county detention centers because they were unable to post bail.

*McGinnis*, 410 U.S. at 266-67, 93 S.Ct. at 1057. Moreover, as the Supreme Court observed, "Appellees contend that denying state prisoners good-time credit for the period of their pre-sentence incarceration in a County jail . . . violates equal protection of the laws and *discriminates against those state prisoners unable to afford or otherwise qualify for bail* prior to trial." *McGinnis*, 410 U.S. at 268, 93 S. Ct. at 1058 (quotations omitted). *McGinnis* is clearly not distinguishable from *MacFarlane* based on the indigency of the petitioners. Rather, the essence of the *McGinnis* opinion is that a state early-release scheme that may have a disparate impact on indigent defendants nonetheless does not violate the Equal Protection Clause as long as that scheme is rational.

6. ¶ Under the analysis set forth by the United States Supreme Court, I believe Montana's good-time statute has a rational basis. The legislature could have rationally decided to limit good-time credit to inmates in the state correctional facility because incarceration at a state correctional facility affords state officials with increased opportunities for evaluating an inmate's behavior and rehabilitative progress. *See McGinnis*, 410 U.S. at 274, 93 S.Ct. 1061. The legislature also could have concluded that a sufficient incentive for good behavior in a pretrial detention setting is provided by the prospect of being sentenced to a longer term based on a detainee's behavior while so incarcerated and that no such incentive exists for a prisoner already sentenced to a correctional facility. *See Chestnut*, 942 F.2d at 824. Likewise, the legislature may have concluded that its good-time statute serves the purpose of rehabilitation, a process which cannot logically begin until after a conviction has been obtained. *See Lemieux*, 931 F.2d at 1394.

7. ¶Accordingly, for the aforementioned reasons, I would deny MacPheat's petition for writ of habeas corpus.

/S/ JIM REGNIER

Chief Justice J. A. Turnage and Justice Karla M. Gray join in the dissenting opinion of Justice Regnier.

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

1. The version of the statute in effect when MacPheat committed the offense of felony arson on or about January 4, 1995.

2. The Montana Legislature amended § 53-30-105, MCA, the good-time statute, to provide day-for-day good-time effective July 1, 1995. *See* Sec. 10, Ch. 372, L. 1995. The legislature also repealed this section effective January 31, 1997. *See* Secs. 12(2), 13, Ch. 372, L. 1995.

3. As far as we can tell from the record before us MacPheat received credit for the actual time he was incarcerated in the county jail. He did not get additional good-time credit for the actual time he was incarcerated in the county jail, however.

4. *See generally* Title 46, Ch. 9, part 1, MCA, and specifically §§ 46-9-102, MCA, and 46-9-301, MCA, and Article II, Section 21 of the Montana Constitution.

5. MacPheat represents that the Honorable C.B. McNeil is now the district court judge in jurisdiction of his case, the Honorable Katherine R. Curtis, having been recused. The record before us is insufficient to substantiate which district court judge is in jurisdiction. Accordingly, we instruct the Clerk of the District Court to direct this order to the district court judge in jurisdiction, even if that judge is not listed among those designated herein.

6. In *Bearden*, the Court applied the "fundamentally unfair or arbitrary" test to hold that a probationer's probation could not be revoked simply because he was unable to pay a fine absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were somehow inadequate. *Bearden*, 461 U.S. at 666.