JUSTICE TRIEWEILER,
dissenting.
¶15 I concur with the majority's conclusion that Sebastian's petition is not moot. I dissent from the majority's conclusion that Sebastian's petition is without merit.
¶16 The majority opinion correctly states the controlling rule from MacPheat v. Mahoney, 2000 MT 62, 299 Mont. 46, 997 P.2d 753, but then fails to apply the rule. In MacPheat we held that if a criminal defendant is unable to secure his presentence freedom for no other reason than his indigency, then he is entitled to good time credit for the time spent in county jail to the same extent that he would have received good time credit had he served the entirety of his sentence in a state correctional facility.
¶17 In this case it is undisputed that Sebastian spent 321 days in county jails awaiting sentencing and twenty days in county jails awaiting probation revocation. His indigence is not an issue nor is it denied that all of the offenses for which he was imprisoned were bailable.
¶18 However, the majority cites our previous order in Corcoran v. Mahoney, No. 00-346 (decided 7/13/00), for the conclusion that security levels found in county jails are consistent with close custody security classifications at Montana State Prison and that, therefore, defendants incarcerated in county jails are entitled to no more than ten days per month good time pursuant to the pre-1995 good time statute which applies to Sebastian. The majority concludes that “it is pure speculation” what a defendant's classification will be when he arrives at the Montana State Prison and therefore it is “impossible” to apply § 53-30-105, MCA (1993), to pretrial detainees.
¶19 I disagree. First, Corcoran was a pro se petition which did not address the constitutional issue raised by Sebastian and is in no way binding on anyone other than the Department of Corrections and Corcoran. Second, we know exactly how long Sebastian spent in the reception unit each time he was sent to the state prison following his detention at a county jail and we know exactly what his classification was after he was transferred from the reception unit. Therefore, it is possible to comply with the mandate of MaePheat and determine exactly how much good time Sebastian would have been entitled to receive had he been able to post bail and serve the entirety of his *164 sentence in the state correctional facility.
¶20 For example, Sebastian was first sent to the Montana State Prison following detention at a county jail on August 29,1990. He was housed in the reception unit for seventeen days until September 14,1990, and then received an institutional classification of “Minimum II.” He was entitled to good time at the rate of ten days per month for the seventeen days spent in the reception unit and a minimum of fifteen days per month for the time spent thereafter while classified Minimum II. However, because he spent eighty-three days in the county jail awaiting imposition of that sentence, he was denied at least five days per month good time credit for that eighty-three days based on his indigency.
¶21 Sebastian arrived at the prison a second time on January 11, 1991, and spent eleven days in the reception unit following which he was classified “Minimum I.” The third time he was sent to the Montana State Prison he spent three days in the reception unit and was classified “Minimum II.” The last time he was sent to the Montana State Prison he spent twenty days in the reception unit and was again classified “Minimum II.”
¶22 In other words, we know exactly how many days it took to classify Sebastian each time he was sent to the prison and we know that each time he was classified, it was to a classification for which he was entitled to more than ten days per month of good time credit. Allowing ten days of good time credit for the total amount of time spent by Sebastian in the reception unit and giving him credit at the rate he was actually given by the prison following his various classifications, it is quite simple to determine how much good time credit Sebastian was denied while imprisoned at county jails because of his indigency. Therefore, there is no sound reason under the Equal Protection Clause as enforced in MacPheat to deny him equal'treatment.
¶23 The problem with the reasoning in the majority opinion is that it assumes good time should be calculated based on conditions in the county jail. On the contrary, the principle established in MacPheat is that the defendant is entitled to the same good time as if his entire sentence had been served in the state prison. Therefore, the fact that no classification had been assigned while in county jail and the fact that § 53-30-105, MCA (1993), was not intended to apply to county jails is irrelevant.
¶24 Contrary to the reasoning in ¶ 12 of the majority opinion, awarding Sebastian the appropriate amount of good time credit does not require the assumption that, he was entitled to any security *165 classification upon entering the county jail. We know that there are none. Instead, we are required to assume that he was able to post bail and would not have served any pre-sentence time in county jail. Nor do we need to assume that he maintained his original classification in county jail or that he participated in non-existent programs. The fact that they have no programs in county jails is exactly the point. Those who can afford bail serve their entire sentence with access to programs which can reduce the term of their imprisonment. Those who cannot afford bail serve longer because no programs are available.
¶25 Instead of speculating about non-existent programs, we need only to look at his actual record at the state prison to determine exactly what his post-sentence record was and then apply it to his presentence jail time.
¶26 For example, assume that Sebastian or any other inmate served 200 days in a county jail prior to conviction and imposition of sentence because he could not afford bail. Assume that he then was sentenced to prison where he spent thirty days in the reception unit, was classified for minimum security and discharged the prison portion of his sentence after 300 additional days. We know that had he been able to post bail he would have credit for 530 days at the prison rather than 330, and that for all but the first thirty of those days he would have been entitled to at least thirteen days of credit per month rather than ten. On that basis, the calculation of the actual good time credit to which he was entitled leaves no room for speculation.
¶27 We do not speculate about what he could have earned in county jail because we assume he would not have been in county jail. We look to his actual record in prison to see what he would have earned in prison had his entire sentence been served there.
¶28 Because of the majority's decision in this case, indigent criminals in Sebastian's situation are imprisoned longer than those who can afford bail even though they have committed the same crime and their circumstances are otherwise identical. This is a classification which denies liberty based on financial status. Without a compelling basis for the distinction (and the Department of Corrections has demonstrated none), it violates the Equal Protection Clause of the Montana State Constitution.
¶29 For these reasons I concur in part and dissent in part from the majority opinion.
JUSTICE LEAPHART joins in the foregoing dissent.