IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 00-204

2000 MT 170

300 Mont. 322

5 P.3d 542

_____

BRAD D. EISENMAN, )

)

Defendant and Petitioner, ) O P I N I O N

)

v. ) and

)

STATE OF MONTANA, ) O R D E R

)

Plaintiff and Respondent. )

_____

1. ¶Before this Court is Eisenman's *pro se* application for writ of supervisory control

and motion to proceed *in forma pauperis*. Eisenman grounds his application in our recent decision, *MacPheat v. Mahoney*, 2000 MT 62, 997 P.2d 753, 57 St.Rep. 291, and requests that we remand this case to the District Court for fact-finding as we did in *MacPheat*.

2. ¶The State responded to the application for writ of supervisory control and requested that we deny the application on the basis that *MacPheat* should not be applied retroactively to cases that have already become final. The State also argues that a writ of supervisory control is not appropriate in this case because Eisenman failed to plead that the District Court is proceeding upon a mistake of law; that a writ of habeas corpus is not appropriate here because Eisenman failed to plead he would be entitled to release if he received the "good time" credits he requested; that Eisenman failed to show that his conduct was good while he was incarcerated, thus entitling him to "good time" credits; and that Eisenman is not entitled to "good time" credits for jail time served prior to revocation of his suspended sentence because Eisenman was on probation.

## Background

1. ¶On February 12, 1990, Eisenman pleaded guilty to two counts of felony burglary in violation of § 45-6-204, MCA. Eisenman was sentenced to ten years in the Montana State Prison (MSP) on each count. The sentences were to run concurrent with each other. Eisenman's sentence was suspended on various conditions and he was to receive credit for time served at the Missoula County Jail in the amount of 77 days.

2. ¶On July 23, 1997, the State petitioned to revoke Eisenman's suspended sentences. A hearing was held on the State's motion on October 15, 1997. The District Court subsequently found that Eisenman had violated the terms and conditions of his probation by testing positive for cocaine, opiates and marijuana on two occasions; by failing to pay restitution and court fees; and by violating the State's condition regarding residence. Consequently, the court revoked Eisenman's suspended sentences and sentenced him to ten years in MSP on each count. The sentences were to run concurrent with each other. The court also designated Eisenman a non-dangerous offender.

3. ¶In addition, the District Court suspended two years on each of Eisenman's ten-year sentences while imposing various conditions including the payment of restitution and various fees. The court also noted:

Due to the Defendant's failure to comply with the terms and conditions of his suspended

sentence while under the supervision of the Department of Probation and Parole, the Court finds that he is not entitled to receive, and shall not receive, credit for any elapsed time between the date of his conviction and the date of this Order, except that he shall receive credit from November 29, 1989, through April 9, 1990; and from August 4, 1997, through date of sentencing, November 3, 1997, for two hundred twenty-four (224) days jail time which he has previously served.

1. ¶Eisenman filed his Application and Petition for Writ of Supervisory Control with this Court on April 5, 2000. In his application, Eisenman contends that he is entitled to "good time" credits in the amount of 92 days for jail time he served presentence. He requests that this Court enter an order to the records department of MSP directing them to apply that reduction to his sentence pursuant to *MacPheat*.
2. ¶We address the following issues:
3. ¶1. Whether a writ of supervisory control is appropriate in this case.
4. ¶2. Whether *MacPheat* should be applied retroactively in this case.
5. ¶3. Whether Eisenman is entitled to "good time" credits.

## Issue 1.

1. ¶*Whether a writ of supervisory control is appropriate in this case.*
2. ¶Supervisory control is an extraordinary remedy that is only appropriate when a district court is proceeding upon a mistake of law which, if uncorrected, would cause significant injustice and the remedy by appeal is inadequate. *Evans v. Montana Eleventh Jud. Dist. Court*, 2000 MT 38, ¶ 15, 995 P.2d 455, ¶ 15, 57 St. Rep. 175, ¶ 15; *Park v. Sixth Judicial Dist. Court*, 1998 MT 164, ¶ 13, 289 Mont. 367, ¶ 13, 961 P.2d 1267, ¶ 13 (citations omitted). Our determination of whether supervisory control is appropriate is a case-by-case decision, based on the presence of extraordinary circumstances and the need to prevent an injustice from occurring. *Park*, ¶ 13 (citing *State ex rel. Mazurek v. Fourth Jud. Dist. Court* (1996), 277 Mont. 349, 352-53, 922 P.2d 474, 476-77.
3. ¶In the case *sub judice*, the State argues that supervisory control is not appropriate because Eisenman failed to plead that the District Court is proceeding upon a mistake of law. We agree with the State that supervisory control is not appropriate in this case, albeit for a different reason. This Court's power of supervisory control extends only to inferior courts, not to other government agencies. Art. VII, § 2, Mont. Const. It is the Department of Corrections (the DOC) that awards "good time"

credits, not the District Court. Thus, Eisenman's claims are more appropriately asserted by a writ of habeas corpus because habeas corpus relief is available to every person imprisoned or otherwise restrained of their liberty. *MacPheat*, ¶ 5 (citing § 46-22-101, MCA).

4. ¶Even so, the State argues that a writ of habeas corpus, while the appropriate remedy in a case of this nature, is not available to Eisenman because Eisenman failed to plead that he would be entitled to release if he received the "good time" credits he requested. Contrary to the State's suggestion, it is not premature to consider a habeas petition prior to the time the inmate is entitled to release. In *Peyton v. Rowe* (1968), 391 U.S. 54, 63, 88 S.Ct. 1549, 1554, 20 L.Ed.2d 426, the United States Supreme Court noted that

a principal aim of the writ [of habeas corpus] is to provide for swift judicial review of alleged unlawful restraints on liberty. Calendar congestion . . . and the exigencies of appellate review account for largely unavoidable delays in the processing of criminal cases. But the prematurity rule . . . in many instances extends without practical justification the time a prisoner entitled to release must remain in confinement.

Hence, the Supreme Court determined in *Peyton* and later in *Garlotte v. Fordice* (1995), 515 U.S. 39, 115 S.Ct. 1948, 132 L.Ed.2d 36, that immediate physical release is not the only remedy available under a writ of habeas corpus. *Peyton*, 391 U.S. at 67, 88 S.Ct. at 1556. Granted, *Peyton* and *Garlotte* deal with challenges to convictions while the case before us on appeal deals with the application of "good time" credits. Nevertheless, the distinction appears to be without a difference.

1. ¶Therefore, we deem Eisenman's application for writ of supervisory control a petition for writ of habeas corpus and we proceed on that basis.

### Issue 2.

1. ¶*Whether MacPheat should be applied retroactively in this case.*
2. ¶In *MacPheat*, an MSP inmate argued that he was entitled to "good time" credits for the time he spent in the county jail awaiting sentencing. He alleged that because he was indigent and unable to post bail, he was subject to a greater length of imprisonment than other convicted felons who were able to post bail. We held in *MacPheat* that

if the criminal defendant, for no other reason than his indigency, is unable to secure his pre-sentence freedom by posting bail, then he is entitled to good-time credit for the time he spends in the county detention facility, pre-sentence, to the same extent that the law allows good-time credit to the criminal defendant who is able to post bail and, thus, serve the entirety of his sentence in the state correctional facility.

*MacPheat, ¶ 22.*

1. ¶The State argues that we should not apply the new rule which we announced in *MacPheat* retroactively to cases that have already become final.

2. ¶The United States Supreme Court ruled in *Teague v. Lane* (1989), 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, that retroactivity analysis pertains when the court announces a new rule of law that "breaks new ground or imposes a new obligation on the States or the Federal Government." The Supreme Court determined that courts must apply new rules of constitutional law to cases pending on direct appeal and all subsequent cases, but it cannot apply the new rule on collateral attack to final convictions unless it meets one of two exceptions:

First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Second, a new rule should be applied retroactively if it requires the observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.'"

*Teague, 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted).*

1. ¶We adopted the *Teague* standard in *State v. Egelhoff* (1995), 272 Mont. 114, 900 P.2d 260, *rev'd on other grounds sub nom Montana v. Egelhoff* (1996), 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361; and *State v. Nichols,* 1999 MT 212, 295 Mont. 489, 986 P.2d 1093. In *Egelhoff*, we held that the defendant was denied due process when the jury was instructed that voluntary intoxication may not be taken into consideration in determining the existence of a mental state which is an element of the offense. *Egelhoff*, 272 Mont. at 125, 900 P.2d at 266. We concluded in *Egelhoff*, that our decision in that case was applicable to all cases still subject to direct review by this Court on the date of that opinion, but that our decision was not applicable to

those cases which had become final before the new rule was announced. *Egelhoff*, 272 Mont. at 126, 900 P.2d at 267 (citing *Teague*, 489 U.S. at 310-11, 109 S.Ct. at 1076).

2. ¶In *Nichols*, we refused to retroactively apply to Nichols' case the new rule declared in *State v. Guillaume*, 1999 MT 29, 293 Mont. 224, 975 P.2d 312, which afforded broader protection under the Montana Constitution than the double jeopardy clause of the federal constitution with respect to weapons enhancement. We determined in *Nichols* that since Nichols' case was not pending on direct review, his conviction had been final for more than five years, and he did not meet either of the two exceptions for application of a new rule for cases on collateral review as outlined in *Teague* and *Egelhoff*, the rule announced in *Guillaume* could not retroactively apply to Nichols' case. *Nichols*, ¶ 13-17.

3. ¶In the case before us, the District Court first sentenced Eisenman on February 12, 1990. Eisenman's time in which he could file a notice of appeal lapsed on April 13, 1990. The court revoked Eisenman's suspended sentence and sentenced him to prison on November 19, 1997. His time to file an appeal from this order of revocation lapsed on January 18, 1998. Rule 5(b), M.R.App.P. Thus, Eisenman's judgment was not pending on direct review and had become final more than two years ago.

4. ¶Accordingly, if the issue addressed in *MacPheat* had been capable of being raised on direct appeal and was not on direct review, our decision in *Nichols* would preclude applying the new rule in *MacPheat* retroactively. However, the case at bar comes to us in a different procedural posture. First, the issue addressed in *MacPheat* cannot be raised on direct review. The DOC awards "good time" credit, not the district court. The only time that the *MacPheat* issue will arise is at the time the DOC determines whether the inmate is entitled to "good time" credit. *MacPheat* simply holds that in determining any "good time" credit allowed, the inmate is entitled to count the time he spent in a county detention facility, pre-sentence because he was indigent and unable to post bail. The only way the *MacPheat* issue could have been raised was by petition for writ of habeas corpus.

5. ¶Implicit in the analysis in *Teague* and its progeny is the assumption that a district court has made a substantive or procedural decision in a case which has become final; this Court decides in a subsequent case that a similar decision was made incorrectly; and the defendant in the earlier decision seeks the benefit of our later decision by collateral attack. This is not the situation before us.

6. ¶Eisenman is not complaining about a decision made by the District Court which had become final. He is complaining about the calculation of "good time" credits,

which is not a judicial function. It is an administrative function which he had no standing to complain about until his release date was threatened by miscalculation. *See* § 53-30-105, MCA (1995).

7. ¶Unlike the parties who seek retroactive application of a judicial decision, Eisenman is in exactly the same procedural posture that MacPheat was in when he originally petitioned for enforcement of the equal protection clause. Therefore, we conclude that retroactivity analysis is inapplicable to Eisenman's case.

## Issue 3.

1. ¶*Whether Eisenman is entitled to "good time" credits.*
2. ¶The State argues that Eisenman failed to show that his conduct was good while he was incarcerated, thus entitling him to "good time" credits. In addition, the State argues that Eisenman is not entitled to "good time" credits for jail time served prior to revocation of his suspended sentence because Eisenman was on probation. Neither of these arguments is particularly relevant to what we actually decided in *MacPheat*.
3. ¶We held in *MacPheat* that

if the criminal defendant, for no other reason than his indigency, is unable to secure his pre-sentence freedom by posting bail, then he is entitled to good-time credit for the time he spends in the county detention facility, pre-sentence, to the same extent that the law allows good-time credit to the criminal defendant who is able to post bail and, thus, serve the entirety of his sentence in the state correctional facility.

*MacPheat, ¶ 22. Whether, and if so, the extent to which Eisenman earned--or lost--"good time" credit because of his behavior while he was in the custody of the DOC or under its supervision is a matter within the purview of the DOC in its application of Montana law and the DOC regulations and policies. Nothing in MacPheat mandated the granting of "good time" under circumstances where the law or the DOC policies or regulations, otherwise, prohibited the inmate from accruing credit for his time incarcerated or under supervision. MacPheat simply requires that if, prior to sentencing, the defendant was otherwise entitled to bail, but could not post bail solely by reason of his indigency, then he will be deemed to have served in the state correctional facility that time which he served in the county detention facility, pre-sentence. MacPheat places the inmate too poor to post bail pre-sentence, in the same status as the inmate who had the funds to secure his freedom, pre-sentence; nothing more and nothing less.*

1. ¶Here, as was the case in *MacPheat*, the record before us does not establish whether Eisenman was offered or denied bail pre-sentence and whether, if offered, the sole reason for his inability to post the bail so offered was his indigency. Accordingly,

this case must be remanded to the Fourth Judicial District Court for fact finding and a decision relative to this issue. If the trial court determines that Eisenman is entitled to "good time" credit for the time he spent in the county detention facility pre-sentence under the test articulated above, then the court shall determine the amount of time which Eisenman was so detained and shall order the DOC to apply the appropriate "good time" credit to the reduction of Eisenman's sentence to the same extent that Eisenman would have received credit had the time he served in the county detention facility pre-sentence been, instead, served in the state correctional facility. If, on the other hand, the District Court determines that Eisenman was not detained in the county facility pre-sentence by reason of the test set out above, then the court shall enter an order to that effect with a brief statement of its rationale.

2. ¶Finally, if the District Court determines that Eisenman is entitled to credit for the time he served pre-sentence in the county detention facility under the *MacPheat* test, it is our intent that the District Court not be burdened with the task of computing the amount of the actual "good time" credit that may be applied to the reduction of Eisenman's sentence. That is an administrative function which the DOC must perform and will necessarily require it to take into account Eisenman's record of behavior while incarcerated and whether he was, at some time, on some sort of supervisory status. The District Court's duty on remand is simply to determine whether Eisenman was detained pre-sentence in the county detention facility because he was too poor to post bail, and, if so, the amount of days he was so detained, and to then enter the order referred to above.

3. ¶IT IS ORDERED that Eisenman's Application and Petition for Writ of Supervisory Control should be and the same is hereby deemed to be a Petition for Writ of Habeas Corpus.

4. ¶ IT IS FURTHER ORDERED that Eisenman's Petition for Writ of Habeas Corpus is GRANTED. This case is remanded to the Fourth Judicial District Court for further proceedings consistent with this Opinion and Order. We direct that this matter receive priority on the District Court's calendar.

5. ¶IT IS FURTHER ORDERED that the Clerk of this Court give notice of this order by mail to Eisenman at his last known address, to counsel for the Montana Department of Corrections, and to the Fourth Judicial District Court.

DATED this 6th day of July, 2000.

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

Justice Karla M. Gray, specially concurring.

¶35 I concur in the Court's Opinion and Order. I write separately to clarify that I remain convinced the Court erred in *MacPheat v. Mahoney*, 2000 MT 62, 997 P.2d 753, 57 St. Rep. 291, for the reasons set forth in Justice Regnier's dissent therein, which I joined. The Court having spoken and stated what the law is, however, I am bound by that law as are all other Montanans.

/S/ KARLA M. GRAY