No. 01-030

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 234

STATE OF MONTANA,

        Plaintiff/Respondent,

    v.

WILLIAM EDGAR CARSON, a/k/a
RICHARD GORDON CARSON,

        Defendant/Appellant.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
                  In and for the County of Rosebud,
                  The Honorable Joe L. Hegel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Robert L. Stephens, Jr., Southside Law Center, Billings, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; John Paulson,
                Assistant Attorney General, Helena, Montana

                Michael B. Hayworth, Rosebud County Attorney, Forsyth, Montana


                         Submitted on Briefs: March 21, 2002

                              Decided:   October 17, 2002

Filed:

_____
                      Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    In 1997, the Appellant, William Edgar Carson, pled guilty to felony theft and the District Court for the Sixteenth Judicial District in Rosebud County sentenced him to a three-year deferred imposition of sentence. Approximately one year later, Carson admitted that he violated the conditions of his deferred sentence and pled guilty to three additional misdemeanor offenses. The District Court imposed an eighteen-month jail sentence for the misdemeanor violations and revoked his deferred sentence. In lieu of the deferred sentence, the District Court committed Carson to the Department of Corrections (DOC) for a period of eight years. Carson subsequently filed a motion to modify the sentence and petitions for postconviction relief and a writ of habeas corpus. The District Court denied Carson's motion and petitions and Carson appeals. We affirm in part and reverse in part the order of the District Court.

¶2    We address the following issues on appeal:

¶3    1.    Did the District Court err when it denied Carson's petition for postconviction relief?

¶4    2.    Was Carson entitled to legal representation at his parole hearing?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    In March of 1997, the Respondent, State of Montana, intended to charge Carson, by information, with felony theft. However, at all times relevant to the felony theft proceedings, Carson maintained that his name was Richard Gordon Carson. Therefore, the

2

charging documents charged Carson's alias with the relevant offense. Ultimately, Carson pled guilty to felony theft and executed an acknowledgment of sentence in the name of "Richard Carson."

¶6 In November of 1997, the State alleged that Carson violated the terms of his deferred sentence and a bench warrant was issued for his arrest. Through fingerprint analysis and photo identification, the State discovered that Carson misrepresented his true identity throughout the felony theft proceedings. Therefore, on December 23, 1997, the State charged Carson, by information, with: (1) perjury, a felony, in violation of § 45-7-201(1), MCA; (2) unsworn falsification to authorities, a misdemeanor, in violation of § 45-7-203(1)(a), MCA; and (3) obstructing a peace officer or other public servant, a misdemeanor, in violation of § 45-7-302(1), MCA. On March 26, 1998, Carson admitted that he violated the conditions of the deferred sentence associated with the felony theft charge. Consequently, on March 30, 1998, the District Court recommended that Carson be placed in the Swan River Boot Camp Program. However, on April 1, 1998, the Treasure State Correctional Training Center denied Carson admission to the boot camp. On July 9, 1998, the State amended the perjury charge to false swearing, a misdemeanor, in violation of § 45-7-202(1)(a), MCA, and Carson subsequently pled guilty to all of the misdemeanor offenses.

¶7 On August 3, 1998, the District Court entered two separate sentencing orders which addressed the deferred sentence violation

3

and misdemeanor offenses. The District Court revoked the deferred sentence and committed Carson to the DOC for a period of eight years. However, the District Court recommended that Carson "be pre-screened for direct commitment from the Rosebud County Jail to the Swan River Boot Camp Program." The court indicated that upon successful completion of the boot camp program and subsequent halfway house requirement, Carson would be eligible for reduction of his sentence pursuant to § 53-30-402, MCA. For the misdemeanor offenses, the District Court sentenced Carson to three consecutive six-month jail terms to be served concurrently with the felony theft sentence.

¶8 In February of 2000, Carson submitted an application for parole to the Board of Pardons and Parole (Board). Carson's attorney submitted a request to the Board to represent Carson at the hearing. However, the Board denied the attorney's request because he submitted it less than ten days prior to the scheduled hearing. On February 29, 2000, the Board denied Carson parole.

¶9 On July 5, 2000, Carson filed a document with the District Court entitled "Motions for Post-Conviction Relief, Modification of Sentence and Petition For Habeas Corpus." Carson alleged that the DOC had and continued to violate his constitutional rights to due process and equal protection of the laws in contravention of the United States and Montana Constitution. Specifically, Carson alleged that the DOC unconstitutionally denied him the right to legal representation at a hearing before the Board. Further, Carson requested that the District Court reexamine the DOC's

4

erroneous calculation of credits for time-served and good time. Carson also contended that his continued incarceration was contrary to public policy and the District Court's sentencing intent. Therefore, Carson requested that the District Court order the DOC to show cause why his incarceration should not be terminated. On October 19, 2000, the District Court denied Carson's motion for modification of the sentence as well as his petitions for postconviction relief and writ of habeas corpus. Carson appeals the order of the District Court which denied his requested relief.

## DISCUSSION

### ISSUE 1

¶10 Did the District Court err when it denied Carson's petition for postconviction relief?

¶11 Carson insists that when the District Court amended his sentence in August of 1998, it clearly intended to utilize those alternatives to incarceration which have been established for nonviolent offenders. Carson contends that his current sentence conflicts with the District Court's sentencing intent and the public policy which aspires to punishment commensurate to the crime committed. Carson claims that the District Court had jurisdiction to entertain his motion for postconviction relief because "[t]he original charges in this case stem from the Information filed on March 20, 1997." On April 28, 1997, the Legislature reduced the statute of limitations for filing postconviction relief petitions from five years to one year. Because the State charged Carson prior to the statute of limitations' amendment, Carson contends

5

that the five-year statute applies and, therefore, his petition was not time barred.

¶12 In its October 19, 2000, order, the District Court stated that it could only modify Carson's sentence: (1) to correct a clerical error or illegal sentence apparent from the record; (2) upon the revocation of a prior sentence; or (3) upon petition for postconviction relief. The District Court concluded that Carson's petition was not brought pursuant to the first two scenarios. As to Carson's petition for postconviction relief, the District Court concluded:

> [A] petition for post-conviction relief must be filed, if at all, within one year of the date his conviction became final. The Amended Sentencing Order at issue in this case was filed August 5, 1998. It became final upon lapse of the appeal period in October of 1998. Thus, this Court does not have jurisdiction to grant the requested modification.

¶13 We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9. To determine whether a petition for postconviction relief is timely, we look to the statute of limitations in effect at the time the petition is filed, not to the statute in effect at the time of charge or conviction. *Hawkins v. Mahoney*, 1999 MT 82, ¶ 9, 294 Mont. 124, ¶ 9, 979 P.2d 697, ¶ 9. Carson filed his petition for postconviction relief on July 5, 2000. Therefore, the statute of limitations found at § 46-21-102, MCA (1999), applies to the case at bar.

6

¶14 Section 46-21-102(1), MCA (1999), provides that "[e]xcept as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final." In his petition for postconviction relief, Carson sought relief from the amended sentencing order entered on August 3, 1998. The amended sentencing order became final in October of 1998, once the sixty-day period for appeal expired. As indicated above, Carson filed his petition on July 5, 2000. Clearly, Carson did not file his petition within the time period prescribed in § 46-21-102, MCA (1999). Therefore, we hold that the District Court did not err when it concluded that it did not have jurisdiction to entertain Carson's petition for postconviction relief.

7

¶15 Was Carson entitled to legal representation at his parole hearing?

¶16 Carson contends that he had a statutory and constitutional right to counsel at the parole hearing pursuant to § 46-23-202, MCA, and Article II, Section 24, of the Montana Constitution. Carson insists that a habeas corpus petition was the proper vehicle upon which to seek review of the Board's denial of his right to counsel. The State maintains that Carson must exhaust administrative appeals before the District Court can review the Board's denial of his request for representation. Therefore, the State concludes that the District Court "should not insert itself, by means of habeas corpus, into what is essentially a discretionary and administrative matter best left for determination by the Board."

¶17 The District Court stated that the Board has exclusive jurisdiction over parole matters. Therefore, the District Court concluded:

> [I]f the Defendant is claiming a constitutional violation in the Defendant's dealings with the Department of Corrections or before the Parole Board, he should have exhausted any administrative appeals and sought judicial review of such administrative decisions. There is no evidence before this Court that the Defendant has done this, and it would be inappropriate for this Court to insert itself collaterally into such administrative proceedings.

¶18 At the outset, we note that a district court's denial of a habeas petition in a criminal proceeding is not appealable to this Court. *Morrison v. Mahoney*, 2002 MT 21, ¶ 8, 308 Mont. 196, ¶ 8,

8

41 P.3d 320, ¶ 8. However, the State has not objected to the habeas issues raised in Carson's appeal and, instead, argues in favor of the District Court's underlying rationale for its denial. Furthermore, this Court has authority to entertain a subsequent habeas petition. *Morrison*, ¶ 8. Therefore, we deem the issues raised by Carson regarding the right of counsel as an original petition for a writ of habeas corpus and will proceed to address the merits of the relevant claims.

¶19 As indicated above, the State contends that a habeas petition is not the proper vehicle by which to review the Board's denial of representation. The State suggests that Carson should have exhausted his "administrative appeals" prior to filing the habeas petition. However, the State does not refer us to the appropriate administrative process and we have been unable to ascertain the purported procedure.

¶20 In *Eisenman v. State*, 2000 MT 170, ¶ 14, 300 Mont. 322, ¶ 14, 5 P.3d 542, ¶ 14, we noted that "immediate physical release is not the only remedy available under a writ of habeas corpus." Here, Carson requested legal representation at a proceeding which could have potentially reduced his term of imprisonment. To require exhaustion of "administrative appeals" with regard to the right of representation at parole hearings would defeat the purpose for which habeas corpus exists by requiring an unlawfully held inmate to first seek relief from the very institution by which he alleges he is unlawfully held. Neither the Montana Constitution nor relevant habeas statutes contemplate such course of action.

9

Therefore, we conclude that a petition for a writ of habeas corpus is the appropriate vehicle by which to seek review of the Board's denial of representation. We now turn our attention to the merits of Carson's petition for a writ of habeas corpus.

¶21 Section 46-23-202, MCA, provides:

> **Investigation of prisoner by board or board's designee.** (1) Within the 2 months prior to a prisoner's official parole eligibility date or as soon after that date as possible, the prisoner shall make an initial appearance before the board or the board's designee . . . .
>
> (2) Before a prisoner may be paroled, the board or its designee shall:
>
> (a) conduct a hearing and interview the prisoner . . . . At the time of the hearing, the board or its designee must receive relevant statements from interested persons *and any person may be represented by counsel.* The board has the power to regulate procedures at all hearings. [Emphasis added.]

Carson contends that the Board rejected his attorney's request to attend the hearing because his attorney submitted the request less than ten days prior to the hearing. We have found no such requirement within the Montana Code Annotated or Administrative Rules of Montana. We suspect that the Board was referring to Rule 20.25.401(4), ARM, which provides:

> Unless the board otherwise orders, interested persons of legal age who wish to appear before the board and have relevant statements to present shall notify the board in writing not less than three days prior to the regularly scheduled formal hearing of the reason for intent to appear before the board, the date of intended appearance and the relationship of the individual to the inmate at whose hearing the person intends to appear. The board shall have discretion to determine the relevancy of the proposed testimony and the number of interested persons who shall appear at any hearing. Such determinations will be made on a case-by-case basis.

¶22 Rule 20.25.401(4), ARM, does place a time limit on requests from "interested persons" to speak at a parole hearing. However, it does not address representation by attorneys. The State concedes that a person appearing before the Board has a statutory right to be represented by counsel, pursuant to § 46-23-202(2)(a), MCA, but makes no mention of the regulations purportedly relied upon by the Board. Therefore, we conclude that the Board violated Carson's statutory right to counsel at the parole hearing. Accordingly, we hereby grant Carson's petition for a writ of habeas corpus, to the extent it requests reconsideration by the Board with the representation contemplated in § 46-23-202(2)(a), MCA, and remand this matter to the DOC for a new parole hearing, expeditiously scheduled, with Carson's attorney in attendance.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray specially concurring.

¶23 I agree entirely with the Court's opinion on issue one. I agree with the result reached by the Court on issue two, given the procedural posture in which this case is presented. I write separately only to clarify that my agreement with the conclusion that the Board violated Carson's statutory right to counsel at the parole hearing is limited to the facts of this case, namely, that the State did not advance any regulations pursuant to which the

11

Board acted and, therefore, we have no regulations before us upon which the Board reasonably could have relied.  I would not foreclose consideration of any such regulations in a future case where they might be advanced as support for the Board's action.

/S/ KARLA M. GRAY