No. 03-595

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 293

MARCELLINO PEÑA,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 2002-887.
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Kristina Guest, Appellate Defender's Office, Helena, Montana

    For Respondent:

        Honorable Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

        Dennis Paxinos, County Attorney; Kevin Peterson, Deputy County
Attorney, Billings, Montana

                Argued:  March 10, 2004

                Submitted:  March 30, 2004

                Decided:  October 21, 2004

Filed:

                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Marcellino Peña (Peña) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, dismissing his petition for postconviction relief. We affirm.

¶2     The following issue is presented on appeal:

¶3     Did the District Court err in dismissing Peña's petition for postconviction relief which alleged that the District Court lacked statutory authority, and thus, subject matter jurisdiction, to sentence Peña to more than five years to the Department of Corrections (DOC)?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4     Peña was seventeen years old when, on October 31, 1998, he was arrested and charged with deliberate homicide (felony murder) in violation of § 45-5-102, MCA; robbery in violation of § 45-5-401(1)(b), MCA; and aggravated burglary in violation of § 45-6-204, MCA.[1] On Halloween night, Peña and two other males broke into a home in Billings hoping to find drugs and money. The three men wore Halloween masks and had two handguns among them. They knocked on the door, and, when a female resident of the house opened the door to the apparent trick-or-treaters and explained she had no candy, one of them responded, "Wrong answer!" The three men then forced their way into the house.

¶5     Inside, the men demanded drugs and money. The woman told them she had money in one of the bedrooms and led the three to that room. Upon arriving, two of the men,

_____

[1]All statutes referred to herein are from the 1997 version of the Montana Code Annotated.

2

including Peña, began to search the room, while the third forced the woman to her knees and demanded oral sex. One of the two men searching the house found a baggie with hallucinogenic mushrooms and a small jar containing other illicit drugs. The woman began to perform oral sex on the third man who was holding a gun to her head.

¶6     When a vehicle was heard pulling into the driveway, two of the three males, including Peña, broke out a window and crawled out of the house while the third continued to demand oral sex. However, when the homeowner was heard entering the house, the assailant also crawled out of the broken window. Before running away, he yelled "Die, Motherfucker!" and shot and killed the homeowner.

¶7     Responding officers arrested Peña, found the hallucinogenic mushrooms on him, and located Halloween masks, clothing, and one gun in the vicinity of the crime. Witnesses later identified Peña as one of three men running in the area.

¶8     On November 4, 1998, the Yellowstone County Attorney's Office obtained leave to file an Information in District Court. On November 5, 1998, the State arraigned Peña in District Court, although Peña was seventeen at the time. Peña objected to the District Court's jurisdiction over his case without a removal hearing from youth court. Two weeks later, on November 20, 1998, Peña pled guilty to deliberate homicide (felony murder) and aggravated burglary. The State later dismissed the robbery charge. Peña admitted that he had participated in a burglary and that, after he had left the residence, one of the other participants shot and killed an individual. Under a plea agreement, the State agreed to

recommend a sentence of sixty years, with no weapons enhancement and no parole restrictions.

¶9 On April 2, 1999, the District Court sentenced Peña to the Montana State Prison as an adult offender for a total of forty-five years: thirty years for the deliberate homicide, and fifteen years for the aggravated burglary, to run consecutively. Peña did not appeal his judgment of conviction or sentence.

¶10 On April 6, 1999, four days after Peña was sentenced in District Court, this Court decided *State v. Butler*, 1999 MT 70, 294 Mont. 17, 977 P.2d 1000, in which we held that due process requires a hearing before leave to file an Information in District Court can be granted in cases involving a juvenile. On October 25, 1999, Peña filed a *pro se* petition for postconviction relief alleging that, pursuant to *Butler*, his due process rights had been violated because the District Court failed to hold a hearing prior to the transfer of his case from Youth Court to District Court. The Yellowstone County Attorney's Office conceded that Peña was entitled to a removal hearing as a matter of due process, and the District Court set the matter for a hearing on September 5, 2000.

¶11 On September 13, 2000, the District Court issued findings of fact, conclusions of law, and an order granting leave for the State to file the Information against Peña directly in District Court. However, pursuant to a stipulation between Peña and the State, Peña re-entered his guilty pleas and the same sentence was imposed.

¶12 On October 16, 2002, Peña filed a *pro se* petition for postconviction relief in District Court. The District Court appointed the Montana Appellate Defender's Office to represent Peña and ordered the State to respond. On March 5, 2003, through postconviction relief

4

counsel, Peña filed an amended petition for postconviction relief. In his amended petition, Peña argued that his sentence was illegal because, pursuant to § 41-5-206(6), MCA, of the Youth Court Act, youths must be sentenced to the DOC, and, pursuant to § 46-18-201(1)(e), MCA, the maximum sentence to which an individual could be sentenced to the DOC is five years. Peña argued that, pursuant to these two statutes, the District Court lacked the statutory authority to sentence him to more than five years to the DOC. Therefore, Peña requested that the District Court amend his sentence to a five-year commitment to the DOC for each count.

¶13 On July 14, 2003, the District Court issued an order denying Peña's amended petition for postconviction relief on grounds that § 41-5-206(6), MCA, and § 46-18-201(1)(e), MCA, did not constitute a limitation to the court's ability to impose Peña's forty-five-year sentence to the Montana State Prison. Peña now appeals the denial of his amended petition. This Court heard oral argument on the matter on March 10, 2004.

## STANDARD OF REVIEW

¶14 This Court reviews a district court's denial of a petition for postconviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Root*, 2003 MT 28, ¶ 7, 314 Mont. 186, ¶ 7, 64 P.3d 1035, ¶ 7 (citing *State v. Wright*, 2001 MT 282, ¶ 9, 307 Mont. 349, ¶ 9, 42 P.3d 753, ¶ 9).

## DISCUSSION

**¶15** *Did the District Court err in dismissing Peña's petition for postconviction relief which alleged that the District Court lacked statutory authority, and thus, subject matter jurisdiction, to sentence Peña to more than five years to the DOC?*

**¶16** Peña argues that, pursuant to subpart (e) of § 46-18-201, MCA, the sentencing statute, the District Court lacked subject matter jurisdiction to sentence him to more than five years to the DOC. The State argues that Peña's petition is barred by the one-year filing period for postconviction relief set forth in § 46-21-102, MCA. That statute provides:

> **46-21-102. When petition may be filed.** (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at anytime within 1 year of the date that the conviction becomes final. A conviction becomes final for purposes of this chapter when:
> (a) the time for appeal to the Montana supreme court expires;
> (b) if an appeal is taken to the Montana supreme court, the time for petitioning the United States supreme court for review expires; or
> (c) if review is sought in the United States supreme court, on the date that that court issues its final order in the case.

The State reasons that, under § 46-21-102, MCA, because Peña did not appeal his judgment of September 13, 2000, the conviction became final sixty days thereafter, on November 12, 2000. Peña then had one year from that date, or until November 12, 2001, to file his petition for postconviction relief. The State contends that since Peña filed his petition on October 16, 2002, over eleven months beyond the deadline, it was time-barred.

**¶17** Peña responds that, even though he filed his petition beyond the filing deadline established by § 46-21-102, MCA, his claim is not time-barred because he is challenging the sentencing court's subject matter jurisdiction, which can be raised at any time. Peña's

6

jurisdiction argument begins by reference to §§ 41-5-206 and 46-18-201, MCA, which,

Peña explains, control his case as a seventeen-year-old youth.

¶18    Section 41-5-206(6), MCA, of the Youth Court Act, provides:

> **41-5-206.  Filing in district court prior to formal proceedings in youth court.** (1) The county attorney may, in the county attorney's discretion, file with the district court a motion for leave to file an information in the district court if:
>      (a) the youth charged was 12 years of age or older at the time of the conduct alleged to be unlawful and the unlawful act would if it had been committed by an adult constitute:
>      . . .
>      (ii) deliberate homicide as defined in 45-5-102;
>      . . .
>      (v) burglary or aggravated burglary as defined in 45-6-204;
>      . . .
>      (6)  If a youth is found guilty in district court of any of the offenses enumerated in subsection (1) and is sentenced to the state prison, the commitment must be to the department of corrections . . . .

The offenses listed in subsection (1) of § 41-5-206, MCA, include deliberate homicide and

aggravated burglary, the two felonies with which Peña, as a minor, was charged.  Section

46-18-201(1)(e), MCA, provides:

> **46-18-201.  Sentences that may be imposed.** (1)  Whenever a person has been found guilty of an offense upon a verdict or a plea of guilty, the court may:
>      . . .
>      (e)  impose a county jail or state prison sentence as provided in Title 45, for the offense or commit the defendant to the department of corrections for a period not to exceed 5 years for placement in an appropriate correctional facility or program . . . .

Peña contends that the plain language of both § 41-5-206(6), MCA, and § 46-18-201(1)(e),

MCA, when read together, controls the length of sentence which the District Court could

impose.    Specifically, Peña states that because he was a minor whose case had been

7

removed from Youth Court to District Court, § 41-5-206(6), MCA, mandated that he be sentenced to the DOC and, in accordance with § 46-18-201(1)(e), MCA, such a sentence could not exceed five years. Peña argues therefrom that the District Court lacked statutory authority to impose his forty-five-year sentence, which he equates to a lack of subject matter jurisdiction. Accordingly, Peña argues that since subject matter jurisdiction may be raised at any stage of the proceedings, his petition was not barred by the time bar in § 46-21-102, MCA.

¶19 The time bar was not raised by the State in the District Court. The District Court denied Peña's amended petition for postconviction relief on the merits of Peña's statutory argument, concluding that the court was at liberty to sentence him as a seventeen-year-old youth in the manner it did. The court reasoned that Peña was actually sentenced to the Montana State Prison, and that the reference in the sentence to the Department of Corrections was simply a necessary transfer of the youth's custody to that agency until he reached the age of majority.

¶20 Taking up the timeliness issue, we determine whether Peña's challenge to his sentence constitutes a "jurisdictional" claim, whether it is subject to the time limitation of § 46-21-102, MCA, and whether the State waived the timeliness issue by not raising it in the District Court.

### *Subject Matter Jurisdiction vs. Illegal Sentence*

¶21 District courts in Montana are granted jurisdiction by the Constitution and by state statute. Article VII, Section 4 of the Montana Constitution provides:

8

**Section 4. District court jurisdiction.** (1) The district court has original jurisdiction in *all criminal cases amounting to felony* and . . . such additional jurisdiction as may be delegated by the laws of the state of Montana. [Emphasis added.]

This Court has previously considered the meaning of the term "jurisdiction" as it relates to district courts. In *State ex rel. Johnson v. District Court* (1966), 147 Mont. 263, 410 P.2d 933, we defined "jurisdiction" as the "power" or "capacity" of a district court to hear a particular action as well as render a judgment therein:

> "Jurisdiction is the power to hear and determine the particular action or proceeding as well as to make such orders and render such judgment therein as the law authorizes in the class of actions or proceedings to which it belongs." [Quoting *State ex. rel. Lay v. District Court* (1948), 122 Mont. 61, 70-71, 198 P.2d 761, 766.] . . . "Jurisdiction as applied to courts is the power or capacity *given by law* to a court to entertain, hear and determine the particular case or matter." [Quoting *State ex rel. Bennett v. Bonner, Governor* (1950), 123 Mont. 414, 425, 214 P.2d 747, 753.]

*Johnson,* 147 Mont. at 267, 410 P.2d at 935. In *Hagan v. State* (1994), 265 Mont. 31, 873 P.2d 1385, we addressed subject matter "jurisdictional" claims in the context of a sentencing court's ability to accept a guilty plea and impose sentence. We defined jurisdictional claims, in that context, as those defined by *United States v. Cortez* (9th Cir. 1992), 973 F.2d 764. *Hagan*, 265 Mont. at 36, 873 P.2d at 1388. "Jurisdictional" claims, *Cortez* held, are "those cases in which the district court could determine that the government lacked the power to bring the indictment at the time of accepting the guilty plea from the face of the indictment or from the record." *Cortez*, 973 F.2d at 767 (citing *United States v. Broce* (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927).

9

¶22 From these principles, we conclude that "jurisdictional" claims are those which challenge a court's "power" or "capacity" to entertain the subject matter of the proceeding and render a determination therein. Thus, although Peña argues that the sentencing court lacked subject matter jurisdiction to sentence him to the DOC for more than five years by virtue of §§ 41-5-206(6) and 46-18-201(1), MCA, Peña's argument is not properly characterized as a jurisdictional inquiry. Whether a district court commits a statutory error in imposing a sentence must not be confused with the question of whether the court had the "power" or "capacity" to impose the sentence in the first instance. An error in sentencing does not divest a district court of subject matter jurisdiction over the case before it.

¶23 Here, the sentencing court possessed subject matter jurisdiction pursuant to Article VII, Section 4, of the Montana Constitution ("the district court has original jurisdiction in all criminal cases amounting to a felony . . ."), §§ 45-5-102 and 45-6-204, MCA, which defined, respectively, deliberate homicide and aggravated burglary as felonies, with which Peña was charged, and § 41-5-206, MCA, which authorized the transfer of Peña's case to adult court.

¶24 Therefore, Peña's assertion that the District Court lacked subject matter jurisdiction to impose the sentence he received is more accurately characterized as a claim that his sentence was illegal as exceeding statutory authority. A criminal sentence is "legal" if the sentence is "within the parameters provided by statute." *State v. McLeod*, 2002 MT 348, ¶ 12, 313 Mont. 358, ¶ 12, 61 P.3d 126, ¶ 12; *State v. Lafley*, 1998 MT 21, ¶ 26, 287 Mont. 276, ¶ 26, 954 P.2d 1112, ¶ 26; *State v. Goulet* (1996), 277 Mont. 308, 312, 921 P.2d 1245,

1247; *State v. Nelson* (1995), 274 Mont. 11, 18, 906 P.2d 663, 667. "[A] district court's authority to impose sentences in criminal cases is defined and constrained by statute." *State v. Yorek*, 2002 MT 74, ¶ 15, 309 Mont. 238, ¶ 15, 45 P.3d 872, ¶ 15 (citing *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, ¶ 24, 966 P.2d 133, ¶ 24). Indeed, "a district court has no power to impose a sentence in the absence of specific statutory authority." *Nelson*, ¶ 24 (citing *State v. Hatfield* (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029; *State v. Wilson* (1996), 279 Mont. 34, 37, 926 P.2d 712, 714).

¶25    Peña's claim that he received an illegal sentence does not challenge the sentencing court's ability to "entertain, hear and determine the particular case or matter," and, therefore, it is a nonjurisdictional claim for purposes of the postconviction statutes. In light of this conclusion, it is necessary to clarify our holding in *State v. Moorman* (1997), 279 Mont. 330, 928 P.2d 145, which held that the question of whether a district court possesses the authority to impose a sentence is a "jurisdictional" issue. In *Moorman*, where the defendant challenged his dangerous offender designation, we concluded that the sentencing court lacked "subject matter jurisdiction" to impose the particular sentence and that § 46-21-105(2), MCA, the issue preclusion provision of the postconviction statutes, did not apply in such cases. *Moorman*, 279 Mont. at 336, 928 P.2d at 149. However, the question in that case was *not* whether the court possessed the "power" or "capacity" to entertain, hear and determine a matter, but rather whether the particular sentence imposed by the sentencing court was statutorily permissible, and therefore, to the extent that our holding in *Moorman*

11

characterized and resolved the sentencing issue before it as "jurisdictional," that holding was incorrect, and is overruled.

*Application of the One-year Postconviction Time Bar*

¶26     Section 46-21-102, MCA, provides that "a petition *for the relief referred to in 46-21-101* may be filed at anytime within 1 year of the date that the conviction becomes final." (Emphasis added.) Section 46-21-101, MCA, incorporated by reference within § 46-21-102, MCA, delineates the claims which may be brought by way of a postconviction proceeding:

> **46-21-101.  When validity of sentence may be challenged.**  (1)  A person adjudged guilty of an offense in a court of record who has no adequate remedy of appeal and who claims that a sentence was imposed in violation of the constitution or the laws of this state or the constitution of the United States, that *the court was without jurisdiction to impose the sentence*, that a suspended or deferred sentence was improperly revoked, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack upon any ground of alleged error available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy may petition the court that imposed the sentence to vacate, set aside, or correct the sentence or revocation order.  [Emphasis added.]

All claims for relief listed herein, including, as highlighted above, challenges to a sentencing court's jurisdiction, are incorporated within the time limitation of § 46-21-201, MCA:  "[A] petition for the relief *referred to in 46-21-101* may be filed at anytime within 1 year . . . ." Thus, by operation of the statutes, all postconviction claims must be brought within the one-year time period, or they are time-barred.  The only exception to this rule is the one provided by the postconviction statutes themselves.

¶27     A statutory exception to the postconviction time limit is provided for a claim which "alleges the existence of newly discovered evidence that, if proved and viewed in light of

12

the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted[.]" Section 46-21-102(2), MCA. A newly-discovered evidence claim "may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later." Section 46-21-102(2), MCA. We have explained that the time limit is waived pursuant to this exception in order to prevent a clear miscarriage of justice, which exists if a defendant provides the court with newly-discovered evidence that proves the defendant is actually innocent. *State v. Redcrow*, 1999 MT 95, ¶ 33, 294 Mont. 252, ¶ 33, 980 P.2d 622, ¶ 33. We have also interpreted the exception to allow waiver of the time limit for a petition alleging the defendant is "legally innocent." *See State v. Pope,* 2003 MT 330, ¶¶ 68-69, 318 Mont. 383, ¶¶ 68-69, 80 P.3d 1232, ¶¶ 68-69. "We have held that waiver of the time bar is only justified by a 'clear miscarriage of justice, one so obvious that the judgment is rendered a complete nullity.'" *Redcrow*, ¶ 34 (citing *Petition of Gray* (1995), 274 Mont. 1, 908 P.2d 1352).

¶28 The exception to the statutory time bar does not apply in this case. Peña has not asserted that newly-discovered evidence proves he is innocent. *See Sanchez v. State*, 2004 MT 9, ¶ 12, 319 Mont. 226, ¶ 12, 86 P.3d 1, ¶ 12; *State v. Rosales*, 2000 MT 89, ¶ 7, 299 Mont. 226, ¶ 7, 999 P.2d 313, ¶ 7; § 46-21-102(2), MCA. Peña makes no claim that he is actually or legally innocent of the deliberate homicide or aggravated burglary. *Sanchez*,

¶ 13; *Rosales*, ¶ 7. Therefore, no miscarriage of justice has occurred. *Sanchez*, ¶ 13; *Abe*, ¶ 15.

¶29    Thus, Peña's challenge to the sentencing court's jurisdiction is time-barred. Though Peña's claim is actually nonjurisdictional in nature, that determination does not affect the application of the postconviction time bar. According to the postconviction statutes, both jurisdictional and nonjurisdictional claims must be filed within the time period prescribed by § 46-21-102, MCA.

### *Postconviction Relief is a "Special Proceeding,"*
### *and the Time Bar Therein is "Jurisdictional"*

¶30    Peña argues that because the State failed to make the argument in District Court that his claim was time-barred under § 46-21-102, MCA, the State has waived this issue on appeal. The State concedes that the time bar was not raised in the District Court, but contends that the time bar is jurisdictional, and therefore, can be raised at any time in the proceeding. To resolve this issue, we first must determine the nature of the postconviction remedy, and of the one-year time limitation set forth therein.

¶31    Subpart (1) of § 27-1-102, MCA, states that judicial remedies are divided into two classes: "actions" and "special proceedings." Subpart (2) of the same section defines "action" as

> an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. Every other remedy is a special proceeding.

14

Section 27-1-102(2), MCA.  Thus, a "special proceeding" is every other remedy which is *not* an "action."  An "action" is further divided into the two subcategories of "civil action" and "criminal action" in § 27-1-103, MCA:

> **27-1-103.  Civil and criminal actions.**  (1)  Actions are of two kinds:
> (a)  civil; and
> (b)  criminal.
> (2)  A civil action is prosecuted by one party against another for the enforcement or protection of a right or the redress or prevention of a wrong.  Titles 45 and 46 define and provide for the prosecution of a criminal action.  When the violation of a right admits of both a civil and criminal remedy, the right to prosecute the one is not merged in the other.

Pursuant to these provisions, this Court has held that various statutory remedies, including driver's license reinstatement proceedings, guardianship proceedings and informal probate proceedings, are not "actions," but rather "special proceedings."  *See Neal v. State*, 2003 MT 53, ¶ 19, 314 Mont. 357, ¶ 19, 66 P.3d 280, ¶ 19;  *Matter of Klos* (1997), 284 Mont. 197, 201, 943 P.2d 1277, 1279; *Deer Lodge County v. Kohrs,* 1874 WL 3294, *3 (Mont. Terr.).

¶32    Further, the Montana Rules of Civil Procedure provide that a civil action is initiated by the filing of a complaint:

> **Rule 2.  One form of action.**  There shall be one form of action to be known as "Civil Action."

> **Rule 3.  Commencement of action**.  A civil action is commenced by filing a complaint with the court.

Section 46-21-102, MCA, in describing how a postconviction relief proceeding is initiated, states in relevant part:  "[A] *petition* for the relief referred to in § 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final . . . ."  Section 46-21-102(1), MCA (emphasis added).  Thus, the procedure for a postconviction proceeding,

15

including the initiation of the proceeding and the procedural time frame which follows, is different from that set forth for a civil "action." In *Neal*, we stated:

> In contrast to the provisions defining a single form of action governed by the Rules of Civil Procedure, including initiation by complaint and the procedural time frame which follows, [the defendant's] challenge to the suspension of his license was maintained by the filing of a *petition* which invoked a specific statutory procedure and time frame distinct from that provided by the Rules of Civil Procedure.

*Neal*, ¶16 (emphasis added). Section 46-21-201, MCA, provides that the Rules of Civil Procedure apply in postconviction relief proceedings only "to the extent that they are applicable and are not inconsistent with" the postconviction relief statutes. Section 46-21-201(1)(c), MCA. We have held, generally, that the Rules of Civil Procedure are not interjected "into other statutory schemes which provide different procedural requirements." *In Re Estate of Spencer*, 2002 MT 304, ¶ 13, 313 Mont. 40, ¶ 13, 59 P.3d 1160, ¶ 13; *see also Ellenburg v. Chase*, 2004 MT 66, ¶ 12, 320 Mont. 315, ¶ 12, 87 P.3d 473, ¶ 12 ("[t]he Rules of Civil Procedure apply to postconviction petitions only if they are consistent with the specific provisions of the postconviction statutes"). With regard to postconviction petitions, we have recently stated that "[u]nlike civil complaints, the postconviction statutes are demanding in their pleading requirements." *Ellenburg*, ¶ 12.

¶33    In *State v. Placzkiewicz*, 2001 MT 254, 307 Mont. 189, 36 P.3d 934, we specifically held that the time limitation in § 46-21-102, MCA, controls over other tolling provisions, even though postconviction proceedings are civil in nature:

> With respect to postconviction proceedings, the Legislature has set forth a specific statute of limitations at § 46-21-102, MCA. . . . We hold that the specific statute of limitations for postconviction proceedings provided in Title

46, Chapter 21, *controls* over other statutes of limitations and the tolling provisions relating to those.

*Placzkiewicz*, ¶ 19 (emphasis added). Thus, the postconviction time limitations are not subject to other generally applicable tolling provisions, but, rather, are governed by their own procedural requirements.

¶34 Consequently then, postconviction relief is a "special proceeding" governed by the statutes set forth in Title 46, Chapter 21, and is not a civil action governed by the Rules of Civil Procedure.[2] The view that a statutory postconviction remedy is a "special proceeding" comports with the holdings of other states. *See Nebraska v. Bronson* (Neb. 2003), 672 N.W.2d 244, 249 (special proceedings are "every special statutory remedy which is not in itself an action"); *Williams v. Iowa* (Iowa 1985), 378 N.W.2d 894, 896 ("postconviction relief actions are treated as special proceedings at law"); and *Ohio v. La Mar*, 2000 Ohio App. LEXIS 1211 (the civil rules do not apply to "special proceedings"). As the Supreme Court of Ohio has explained:

> State collateral review is not itself a constitutional right. . . . Further, a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. . . . Therefore, a petitioner receives no more rights than those granted by statute.

*State v. Calhoun* (Ohio 1999), 714 N.E.2d 905, 909.

---

[2]Although Title 27, Chapter 2, the statute of limitations chapter, instructs that the term "'action' . . . is to be construed, whenever it is necessary to do so, as including a special proceeding of a civil nature," *see* § 27-2-101, MCA, it is clearly not "necessary to do so" here, because the statutes governing postconviction relief contain specific time provisions relating only to this special proceeding.

¶35 Likewise, postconviction relief is not a constitutional right under Montana law, but rather a statutory right. Because a postconviction petitioner cannot claim more rights, and, likewise, the courts cannot provide more rights, than granted by statute, the statutory rules which circumscribe the postconviction process are jurisdictional in nature. Thus, the time bar in § 46-21-102, MCA, is jurisdictional because it constitutes the time frame during which a district court has the "power" or "capacity" to "entertain, hear and determine" petitions for postconviction relief. *See Johnson,* 147 Mont. at 267, 410 P.2d at 935. We have repeatedly so held:

> This time limitation is a jurisdictional limit on litigation. . . . A failure to file within the allotted time defeats a court's jurisdiction to hear a postconviction claim.

*Sanchez*, ¶ 9 (citing *Maier v. State,* 2003 MT 144, ¶ 20, 316 Mont. 181, ¶ 20, 69 P.3d 1194 ¶ 20; *State v. Carson*, 2002 MT 234, ¶ 13, 311 Mont. 485, ¶ 13, 56 P.3d 844, ¶ 13). Consequently, because the time bar is jurisdictional, it cannot be waived by the State by failing to raise the issue in the District Court. We conclude, therefore, that the State did not waive the time bar issue even though it has raised the issue for the first time on appeal.

¶36 The State also argues that Peña's claim is procedurally barred by § 46-21-105(2), MCA, the issue preclusion provision of the postconviction statutes, because Peña could have challenged the legality of his sentence on direct appeal from the original judgment but did not. Section 46-21-105(2), MCA, provides:

> (2) When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter.

"We have long recognized the importance of applying procedural bars regularly and consistently." *Redcrow*, ¶ 34. This Court applies § 46-21-105, MCA, as a procedural bar "in order to prevent the abuse of postconviction relief by criminal defendants who would substitute those proceedings for direct appeal and in order to preserve the integrity of the trial and direct appeal." *Watson v. State*, 2002 MT 329, ¶ 11, 313 Mont. 209, ¶ 11, 61 P.3d 759, ¶ 11 (citing *State v. Hanson*, 1999 MT 226, ¶ 14, 296 Mont. 82, ¶ 14, 988 P.2d 299, ¶ 14).

¶37 We conclude that because Peña did not challenge the legality of his sentence on direct appeal, it is also procedurally barred by § 46-21-105, MCA.

## *Conclusion*

¶38 Peña has not established that the District Court's findings are clearly erroneous or that the court's interpretations of law are incorrect. Peña's claim that the District Court erred in imposing a forty-five-year sentence is not a "jurisdictional" claim, but, in any event, because jurisdictional and nonjurisdictional claims alike are subject to the time limitation in § 46-21-102, MCA, Peña's claim is time-barred. As a "special proceeding," a postconviction proceeding is not generally governed by the Rules of Civil Procedure, nor the tolling statutes applicable to civil actions. Because § 46-21-102, MCA, circumscribes the time frame during which a sentencing court has the "power" or "capacity" to hear petitions for postconviction relief, that provision is "jurisdictional." Thus, the State did not waive the argument that § 46-21-102, MCA, constituted a time bar to Peña's claim by failing to raise it in the District Court, because jurisdictional claims may be raised at any time during the

19

proceedings.  We conclude, therefore, that the District Court did not err in denying Peña's

petition for postconviction relief.

¶39     Affirmed.


                                             /S/ JIM RICE


We concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER

Justice W. William Leaphart concurring and dissenting.

¶40 Although I concur in the result, I dissent as to the Court's conclusion that the time bar of § 46-21-102, MCA, is jurisdictional in nature. Section 46-21-102, MCA, is, I believe, a statute of limitations. We recognized such in *Morrison v. Mahoney*, 2002 MT 21, ¶ 11, 308 Mont. 196, ¶ 11, 41 P.3d 320, ¶ 11, and *State v. Placzkiewicz*, 2001 MT 254, ¶ 11, 307 Mont. 189, ¶ 11, 36 P.3d 934, ¶ 11, where we characterized this statute as a "statute of limitations."

¶41 If, as the Court concludes, the statute is jurisdictional, then it would be absolute in its application since it is axiomatic that subject matter jurisdiction can never be waived. *See In re Marriage of Miller* (1993), 259 Mont. 424, 427, 856 P.2d 1378, 1380. Unlike a jurisdictional bar, this statute is subject to exceptions and to waiver. There is a statutory exception for a "newly discovered evidence" claim. Section 46-21-102(2), MCA. We have interpreted this exception as encompassing petitions which allege that the defendant is "legally innocent." *See State v. Pope*, 2003 MT 330, 318 Mont. 383, 80 P.3d 1232. We have also held that waiver of the time bar is justified by a "clear miscarriage of justice." *State v. Redcrow,* 1999 MT 95, ¶ 34, 294 Mont. 252, ¶ 34, 980 P.2d 622, ¶ 34. Other than correctly pointing out that neither exception applies here because Peña does not make a claim that he is actually or legally innocent, the Court fails to discuss the inconsistency of holding that a statutory bar which is subject to exceptions or to waiver is, nonetheless, "jurisdictional." As noted above, jurisdiction is absolute and cannot be waived.

21

¶42 Section 46-21-102, MCA, does not mention "jurisdiction." I would interpret this statute as the federal courts have interpreted the one-year period for filing a petition for a writ of habeas corpus–that is, the one-year period is not a jurisdictional bar, but rather, a statute of limitations. *See, e.g., Calderon v. U. S. Dist. Court* (9th Cir. 1997), 128 F.3d 1283, 1288-89.

¶43 As a statute of limitations, § 46-21-102, MCA, is subject to waiver. Thus, when the State did not raise the statutory bar as a defense in the District Court, it waived the issue and is now precluded from raising the issue on appeal. Rule 8(c), M.R.Civ.P.; and *Marias Healthcare Servs. v. Turenne*, 2001 MT 127, ¶ 9, 305 Mont. 419, ¶ 9, 28 P.3d 491, ¶ 9.

¶44 However, even assuming that the State waived the time bar of § 46-21-102, MCA, Peña's claim is still procedurally barred by § 46-21-105(2), MCA, since he could have challenged the legality of his sentence on direct appeal from the original judgment but did not. Accordingly, I concur in the result reached by the Court.

/S/ W. WILLIAM LEAPHART

22